UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SCOTT E. WOODWORTH and
LYNN M. WOODWORTH,

                                    Plaintiffs,                         No. 05-CV-6344 CJS

          -vs-

                                                                        DECISION AND ORDER

ERIE INSURANCE COMPANY,

                                    Defendant.


_____

APPEARANCES

For plaintiffs:          Peter G. Ruppar, Esq.
                         Duke, Holzman, Yaeger & Photiadis, LLP
                         1800 Main Place Tower
                         Buffalo, New York 14202

For defendants:          R. Anthony Rupp, III, Esq.
                         Rupp, Baase, Pfalgraf, Cunningham
                         & Coppola LLC
                         1600 Liberty Building
                         Buffalo, New York 14202


INTRODUCTION

        This action involves a dispute between the parties to a homeowner's insurance

policy over the replacement value of the plaintiffs' home, which was destroyed by a

propane gas explosion.  Now before the Court are the following applications: 1)

Defendant's motion [#12] to dismiss plaintiffs' first cause of action and a portion of

plaintiffs' second cause of action[1], pursuant to Federal Rule of Civil Procedure ("FRCP")

_____

        [1]Plaintiffs have withdrawn their third cause of action.

1

12, subsections (b)(1) and (b)(6); and 2) Plaintiffs' cross-motion [#16] for partial

summary judgment on their first cause of action, seeking a declaratory judgment that

defendant must participate in the appraisal procedure set forth in the policy.  For the

reasons that follow, plaintiffs' application is denied and defendant's application is

granted.

BACKGROUND

Defendant issued plaintiffs a policy of homeowner's insurance covering plaintiffs'

home located in Canandaigua, New York.  Subsequently, plaintiff's home was

destroyed by a gas explosion.  Defendant offered plaintiffs the sum of $308,183.00 as

the actual value of the destroyed home.  Defendant further offered to settle plaintiffs'

replacement-cost claim based on a total estimated replacement cost of $399,565.50.

In other words, in addition to the $308,183.00 that it already paid to plaintiffs, defendant

offered to pay an additional $91,382.50 to cover the additional expenses of rebuilding

or replacing the home.  Plaintiffs rejected the replacement-cost offer, claiming that the

actual replacement cost would be $540,897.91.  Thereafter, plaintiffs repeatedly asked

defendant to negotiate the replacement cost, however, defendant asserted that it had

no obligation to negotiate the replacement cost unless and until plaintiffs actually

replaced their home, at a cost exceeding the $308,183.00 already paid:

> Your recent letter suggests that you remain unwilling to make any
> decisions regarding your next residence until Erie has engaged in further
> "dwelling cost discussions" with you.  You claim that you cannot replace
> your home "without agreement on additional funds." . . .  Erie is under no
> obligation to accept, in advance of any actual construction, what it
> believes is an inflated replacement cost estimate relating to your former
> home.  Because the home has not been repaired or replaced as of this
> writing, there is no replacement cost claim pending at this time.  If and
> when a replacement cost claim is submitted by you in compliance with all

2

> applicable terms and conditions of your policy, Erie will consider it.  If an agreement cannot be reached at that time, you have several potential remedies – including appraisal and litigation – that you may seek to pursue.

Cross-motion for Partial Summary Judgment, Ex. J, August 30, 2004 Letter of R. Anthony Rupp, III.  At the same time, however, defendant stated that it "prefer[red] to reach a negotiated resolution of [the] replacement cost claim in advance of actual construction." *Id.* at Ex. M, January 17, 2004 Rupp letter, p. 4.  Defendant requested that plaintiffs provide detailed information concerning the original construction of their home.  In this regard, defendant claimed that, according to plaintiffs, the house had been built just two years prior to the explosion at a total cost of $270,000, which caused defendant to question why plaintiffs' estimate to rebuild the house was almost twice that amount. See *Id.*, p. 2.  Plaintiffs responded that they had been able to build the house for significantly less money than it would cost to replace, because they had acted as the general contractors and had done much of the work themselves. *Id.*, Ex. N.  Plaintiffs also maintained that they had already provided defendant with the information that it was requesting.

Eventually, plaintiffs demanded an appraisal, "in accordance with lines 123-140 of the standard 165 lines [of the standard New York State fire insurance policy] as well as section 3404 of the New York State Insurance Law," *Id.*, Ex. K.  The appraisal clause of the parties' insurance contract states, in relevant part:

> If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal.  Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received.  The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days after both appraisers have been identified, you or we can ask a judge of a court

of record in the state where you residence premises is located to select an umpire.

Defendant's Motion [#12] Ex. F, p. 9.  Defendant rejected plaintiffs' demand for an appraisal on December 20, 2004, stating:

> You demand for appraisal is rejected, among other reasons, because you have not submitted a replacement cost claim to Erie Insurance.  By the terms of you policy, a pre-condition to a valid replacement cost claim is the expenditure of funds toward the repair or replacement of your home in an amount that exceeds the actual cash value payment previously made to you.

*Id*., Ex. M.  In other words, defendant stated that it had no obligation to comply with the policy's appraisal procedure unless and until plaintiffs actually replaced their home at a cost exceeding the $308,183.00 already paid them.

Plaintiffs commenced this action on June 30, 2005, on the basis of diversity jurisdiction under 28 U.S.C. § 1332, as plaintiffs are citizens of the State of New York, and defendant is a citizen of the State of Pennsylvania.  The Amended Complaint [#5] purports to state three separate causes of action: 1) a claim for a declaratory judgment that defendant "is obligated to proceed and engage in the appraisal process contained in the policy"; 2) a claim for breach of contract; and 3) a claim for punitive damages based on bad faith.  Plaintiffs subsequently withdrew the bad faith claim, leaving only the declaratory judgment and breach of contract claims.  As for the breach of contract claim, plaintiffs allege that defendant breached the agreement in two ways: First, by failing to comply with the appraisal clause; and second, by "failing to pay [them] under the Policy to the full extent of the loss, including but not limited to Additional Living Expenses." Amended Complaint [#5] ¶ 17.  In regard to the alleged failure to pay, while it is not spelled out in the Amended Complaint, plaintiffs apparently contend that

4

defendant improperly calculated the actual value of their destroyed home, and failed to reimburse them for certain additional living expenses, such as hotel and telephone charges.

Defendants have moved to dismiss the Amended Complaint, on two grounds. First, defendant contends that, in the State of New York, an insured is not permitted to sue for specific performance of the appraisal clause in the standard New York fire insurance policy.  Second, defendant contends that plaintiffs cannot assert a claim for breach of contract involving the appraisal clause, since they have not submitted a bona fide claim for replacement costs actually incurred that exceed the amounts already paid to them.  Plaintiffs cross-moved for partial summary judgment on their first cause of action, which, as already mentioned, seeks a declaratory judgment that defendants are required to comply with the policy's appraisal clause.

Counsel appeared before the undersigned for oral argument of the motions on January 5, 2005.  During oral argument, defendant's counsel clarified that, with regard to plaintiff's second cause of action for breach of contract, his motion to dismiss is aimed at the portion of that claim alleging that defendant breached the policy's appraisal clause, but not at the portion of the claim alleging that defendant has failed to pay plaintiffs under the policy "to the full extent of the loss, including but not limited to Additional Living Expenses."  Consequently, it appears that, regardless of how the Court rules on the pending applications, a portion of plaintiffs' breach of contract claim will survive.  The Court has thoroughly considered the parties' submissions and the arguments of counsel.

ANALYSIS

*Defendant's Motion to Dismiss*

It is well settled that in determining a motion under Fed. R. Civ. P. 12(b)(6), a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).  While the Court must accept as true a plaintiff's factual allegations, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). The Court "may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (internal quotations omitted)(*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Generally on a motion to dismiss pursuant to Rule 12(b)(6), the Court must consider only the complaint, which is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)(citations and internal quotations omitted).  Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id*. at 153.

Defendant contends that plaintiffs' first cause of action must be dismissed, because the law of the State of New York, which the Court must apply in this diversity

6

action, does not permit lawsuits for specific performance of appraisal clauses in

insurance policies.  The Court agrees.  Pursuant to New York Insurance Law § 3404,

standard fire insurance policies are required to contain the following provision:

> Appraisal.  In case the insured and this Company shall fail to agree as to
> the actual cash value or the amount of loss, then, on the written demand
> of either, each shall select a competent and disinterested appraiser and
> notify the other of the appraiser selected within twenty days of such
> demand.  The appraisers shall first select a competent and disinterested
> umpire; and failing for fifteen days to agree upon such umpire, then, on
> request of the insured or this Company such umpire shall be selected by a
> judge of the court of record in the state in which the property covered is
> located.  The appraisers shall then appraise the loss, stating separately
> actual cash value and loss to each item; and, failing to agree, shall submit
> their differences, only, to the umpire.  An award in writing, so itemized, of
> any two when filed with this Company shall determine the amount of
> actual cash value and loss.  Each appraiser shall be paid by the party
> selecting him and the expenses of appraisal and umpire shall be paid by
> the parties equally.

Insurance Law § 3404(e) (McKinney 2000).  The statute further provides that,

'[n]otwithstanding any other provision of law to the contrary, the provisions of the

appraisal clause . . . including determinations as to the amount of loss or damage

rendered thereunder, shall be binding on all parties to the contract of fire insurance

evidenced by the policy." N.Y. Insurance Law § 3404(g) (McKinney 2000).  This

subsection, § 3404(g), was adopted in 1990, apparently in response to decisions by the

New York Court of Appeals in the cases *Delmar Box Co. v. Aetna Ins. Co.*, 309 N.Y. 60,

64-65 (1955) and  *Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*, 1 N.Y.2d

534, 538, 154 N.Y.S.2d 870, 872 (1956) some years earlier, which held that an insured

had no right to sue for specific performance of the appraisal clause in the standard New

York fire insurance policy.  The Court of Appeals noted, however, that while the insured

had no means of specifically enforcing the appraisal clause, the insurer was in a

position to enforce the clause, since, by the terms of the policy, it could refuse payment to an insured who refused to take part in an appraisal demanded by the insurer. *Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*, 1 N.Y.2d at 538, 154 N.Y.S.2d at 872. The Court of Appeals did not, however, indicate that an insurer had any greater right than the insured to seek specific enforcement of the appraisal clause in a court proceeding. Moreover, although it could not sue for specific performance, the insured was not left without a remedy, since it could still sue for breach of contract and seek money damages. *Delmar Box Co. v. Aetna Ins. Co.*, 309 N.Y. at 65 ("If the defaulting party happened to be the insurance company, the insured could disregard the appraisal provisions and present all the issues for determination in an action at law upon the policy.")

Plaintiffs contend that the amendment of Insurance Law § 3404(g) in 1990 was intended to allow insureds to sue for specific performance of appraisal clauses. However, in *Fahrenholz v. Sec. Mut. Ins. Co.*, 291 A.D.2d 876, 738 N.Y.S.2d 623 (4th Dept. 2002), the New York State Supreme Court, Appellate Division, Fourth Department, rejected that argument, and found that such actions for specific performance are prohibited by Section 7601 of the New York Civil Practice Law and Rules ("CPLR"), which states, in relevant part, the following:

> A special proceeding may be commenced to specifically enforce an agreement, *other than one contained in the standard fire insurance policy of the state*, that a question of valuation, appraisal or other issue or controversy be determined by a person named or to be selected. The court may enforce such an agreement as if it were an arbitration agreement . . . .

CPLR § 7601 (McKinney 1998) (emphasis added). In *Fahrenholz*, the Fourth

Department affirmed the trial court's dismissal of the insured's claim for a declaratory judgment that the insurer was required to submit to an appraisal, stating: "We add only that Insurance Law § 3404, in its present form, does not eliminate the prohibition against seeking specific performance of the appraisal provision in the standard fire insurance policy set forth in CPLR 7601.  Further legislative action is required to eliminate that prohibition." *Fahrenholz v. Security Mutual Ins. Co.*, 291 A.D.2d at 876, 738 N.Y.S.2d at 624.

Plaintiffs admit that the *Fahrenholz* ruling, if followed by this Court, would bar their claim for specific performance.  They contend, though, that *Fahrenholz* was wrongly decided.  Instead, plaintiffs urge the Court to follow a decision from the United States District Court for the Southern District of New York, *Zar Realty Management Corp. v. Allianz Ins. Co.*, No. 02 Civ. 6741 (HB), 2003 WL 1744288 (S.D.N.Y. Mar. 31, 2003), in which the court disagreed with the ruling in *Fahrenholz*, finding that is was "doubtful that the legislature, after the enactment of § 3404, which specifically requires all parties to adhere to the appraisal clause in the fire policy, intended to preclude a party from seeking an order from the court to compel an appraisal in the event of disagreement." *Id*. at *3, n. 1.

However, this Court respectfully declines to follow the reasoning expressed in the *Zar Realty* case.  In that regard, it is well settled that,

> [a]bsent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir.2000). In predicting how a state's highest court would rule on an issue, it is helpful to consider the decisions of the state's trial and appellate courts. *Id*. The holding of "an intermediate appellate state court ⋯ is a datum for ascertaining state law which is not to be disregarded by a federal court

9

unless it is convinced by other persuasive data that the highest court of
the state would decide otherwise." *West v. AT & T*, 311 U.S. 223, 237, 61
S.Ct. 179, 85 L.Ed. 139 (1940) (cited in Michalski, 225 F.3d at 116).

*Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001).  While the Court

may share the reservations expressed by the court in the *Zar Realty* case, it is unable

to say that there is persuasive data suggesting that the New York Court of Appeals

would disagree with the Fourth Department's decision in *Fahrenholz*.  On the contrary,

the Court of Appeals might well agree that it would be better to allow any inconsistency

between CPLR § 7601 and Insurance Law § 3404(g) to be addressed by New York's

legislature.  Accordingly, defendant's motion to dismiss the first cause of action is

granted.

    Defendant also moves to dismiss the portion of plaintiffs' second cause of action

for breach of contract, which alleges that defendant has breached the insurance

contract by "failing and refusing to engage in the appraisal process set forth in the

Policy." Amended Complaint [#5] ¶ ¶ 17-18.  The Court agrees with defendant that the

claim for breach of the appraisal clause must fail as a matter of law, since plaintiffs

have not repaired or replaced their home.  In that regard, it is settled law in New York

that, "[r]eplacement cost coverage inherently requires a replacement (a substitute

structure for the insured) and costs (expenses incurred by the insured in obtaining the

replacement); without them, the replacement cost provision becomes a mere wager."

*Harrington v. Amica Mut. Ins. Co.*, 223 A.D.2d 222, 228, 645 N.Y.S.2d 221 (4th Dept.

1996) (Wesley, J.); *see also, DeLorenzo v. Bac Agency Inc.*, 256 A.D.2d 906, 907, 681

N.Y.S.2d 846, 848 (3d Dept. 1998) ("[P]laintiff failed to satisfy the condition precedent

of rebuilding".).  Plaintiffs contend that these cases refer only to the insurer's duty *to*

*pay*, and that the insured need not actually rebuild before invoking the appraisal clause. However, the Court disagrees, since the amount of loss, if any, attributable to repairing or replacing the home cannot be determined until the repair or replacement is completed. Consequently, no appraisal of such a loss can be performed until after the repair or replacement occurs. Defendant's motion to dismiss the breach of contract claim based on the appraisal clause is therefore granted.

*Plaintiffs' Cross-motion For Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judg-ment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in

its favor. *Anderson*, 477 U.S. at 249. Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

For the reasons discussed above, plaintiffs' cross-motion for summary judgment on their first cause of action is denied, and that claim is dismissed.

CONCLUSION

Accordingly, plaintiffs' third cause of action is withdrawn, and plaintiffs' application for partial summary judgment is denied.  Defendant's application is granted, and plaintiff's first cause of action, as well as that portion of their second cause of action alleging a breach of the contract's appraisal clause, are dismissed.  Plaintiffs' remaining claim for breach of contract based upon underpayment may go forward.

So Ordered.

Dated: Rochester, New York
       January 17, 2006

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge