UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SCOTT E. WOODWORTH and
LYNN M. WOODWORTH,

        Plaintiffs,

v.

ERIE INSURANCE COMPANY,

        Defendant.

---

**REPORT & RECOMMENDATION**

05-CV-6344CJS

## PRELIMINARY STATEMENT

By order dated July 14, 2005, the above-captioned matter has been referred to the undersigned for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). (Docket # 4). Invoking this Court's diversity jurisdiction, plaintiffs Scott and Lynn Woodworth, who are citizens of New York, have filed suit against defendant Erie Insurance Company ("Erie"), a citizen of Pennsylvania, alleging breach of contract. Currently pending is plaintiffs' motion for leave to amend their complaint. (Docket # 64).

## FACTUAL BACKGROUND

Plaintiffs purchased from Erie a homeowner's insurance policy covering their Canandaigua, New York residence, which provided coverage for sudden and accidental physical loss, including loss caused by fire. (Docket # 5). On August 16, 2003, plaintiffs' home was

destroyed by a gas explosion. In this action, plaintiffs claim that Erie breached the terms of the insurance contract by failing to pay them the full extent of their loss. (Docket # 5).

On January 18, 2006, United States District Judge Charles J. Siragusa granted Erie's motion to dismiss the cause of action seeking a declaratory judgment that defendant "is obligated to proceed and engage in the appraisal process contained in the policy." (Docket # 23). Judge Siragusa also dismissed that portion of plaintiffs' breach of contract claim that was based upon Erie's failure to comply with the appraisal process. (*Id.*). As a result of that decision, plaintiffs' sole remaining cause of action is a breach of contract claim based upon Erie's alleged failure to pay them the actual cash value of their destroyed home, as well as "additional living expenses" as defined under the policy.[1] (*Id.*).

Plaintiffs now seek leave to amend their complaint to request extra-contractual consequential damages based upon Erie's alleged breach of the policy's implied covenant of good faith and fair dealing. (Docket # 64). Although the initial scheduling order in this case was modified several times, its June 1, 2006 deadline for filing motions to amend the pleadings was never extended. (Docket # 30). The deadline for completion of fact discovery was extended until January 16, 2009.[2] (Docket # 60). This motion was filed on January 14, 2009. (Docket # 64).

The following constitutes this Court's report and recommendation.

---

[1] Plaintiffs previously had withdrawn their third cause of action seeking punitive damages based upon bad faith. (*Id.*).

[2] On January 6, 2009, the parties were granted a limited extension until January 30, 2009 to depose one witness whose deposition they were unable to schedule prior to the January 16, 2009 deadline. (Docket # 61). On January 30, 2009, that deadline was extended by an additional thirty days because inclement weather on that day prevented the deposition from proceeding as scheduled. (Docket # 68).

**DISCUSSION**

Plaintiffs' motion for leave to amend their complaint in order to request an award of consequential damages is based upon *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 192-93 (2008), a decision issued by the New York Court of Appeals in February 2008. In *Bi-Economy*, the Court held that an insured may recover consequential damages resulting from an insurer's breach of the policy's covenant of good faith and fair dealing provided that such damages were within the reasonable contemplation of the parties at or before the time of contracting as the probable result of a breach. *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d at 192-93. Relying upon that decision, plaintiffs now seek to amend their complaint to demand additional living expenses not covered by the policy – specifically, mileage to and from the summer cottage where they have been living since the gas explosion and the lost rental income from that cottage –,[3] as well as emotional distress damages and attorneys' fees. (Docket # 64-2 at ¶ 6).

Both parties agree that the Court's decision in *Bi-Economy* represents a change in the substantive law of New York, although they disagree over the scope of the change. (*See* Docket # 64-5 at 2; Docket # 70 at 12). Plaintiffs maintain that *Bi-Economy* applies to all property insurance claims, while Erie argues that it should be limited to commercial property insurance claims. Plaintiffs' position finds support in the Court's opinion in *Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200, 203 (2008), decided the same day as *Bi-Economy*. In *Panasia Estates, Inc.*, the Court cited *Bi-Economy* as authority for the proposition that

---

[3] The policy contains a provision expressly limiting reimbursement of living expenses to twelve months. (Docket # 64-4, Exhibit ("Ex.") A at 5).

3

consequential damages may be asserted "in an insurance contract context" so long as they were reasonably foreseeable.

Plaintiffs filed the instant motion on January 14, 2009, nearly one year after the *Bi-Economy* decision. They explain that they waited eleven months to file in order to await "further developments in the law in this area." (Docket # 73 at 9). Plaintiffs further maintain that the amendment will not result in any prejudice to Erie because they seek no additional discovery and any discovery defendants may desire would be limited. Plaintiffs also note that they already have provided to Erie records reflecting additional living expenses that they have incurred and that they have not sought medical treatment relating to emotional distress, so discovery into these issues will necessarily be brief. (*Id*. at 7-9).

Erie opposes the motion on the grounds that plaintiffs have not demonstrated good cause for their delay in filing the motion. Erie further maintains that it would be prejudiced as a result of the additional discovery arising from this novel theory of damages and that, in any event, the proposed amendment is futile. (Docket # 69).

**A. Good Cause to Amend**

In determining a motion to amend filed after a court-ordered deadline for amending the pleadings, a court must balance the requirements of Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Rule 15(a) provides that once the time for amending a pleading as of right has expired, a party may request leave of the court to amend, which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Generally, under Rule 15, if the underlying facts or

4

circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *See United States ex rel. Maritime Admin. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 16(b), by contrast, directs the court to enter a scheduling order that limits the time to amend the pleadings. Fed. R. Civ. P. 16(b)(1). Moreover, the rule provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the [court]." Fed. R. Civ. P. 16(b). *See Parker v. Columbia Pictures Indus.*, 204 F.3d at 340.

In *Parker*, the Second Circuit addressed the showing required of a party moving to amend its pleadings after the time for filing such a motion had expired. 204 F.3d at 340. Specifically, the Court adopted the rulings of several other circuits, finding that "the Rule 16(b) 'good cause standard,' rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings." *Id.* (collecting cases). According to the Second Circuit, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Id.* "Good cause," the court reasoned, "depends on the diligence of the moving party." *Id.*; *see*, *e.g.*, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (in determining whether

5

a movant has established good cause to amend, the court's primary consideration should be "whether the moving party can demonstrate diligence"); *Lowry v. Eastman Kodak Co.*, 14 F. App'x 27, 30 (2d Cir. 2001) (same); *Carnrite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997) ("'[g]ood cause' means that scheduling deadlines cannot be met despite a party's diligence").

The "good cause" standard may be satisfied by a showing that the substantive law changed, or that the moving party discovered new evidence, following the scheduling deadline. *See Estate of Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977, *3-4 (S.D.N.Y. 2007) (party demonstrated requisite diligence by moving to amend ten days after discovering new evidence in a deposition). That standard is not met, however, where a party delays inexcusably in filing a motion to amend after the change in law or discovery of new evidence. *See*, *e.g.*, *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (plaintiffs' delay of over one year following a change in law not excused under good cause standard); *Lowry v. Eastman Kodak Co.*, 14 F. App'x at 30 (five-month delay defeated claim of good cause); *Lawrence v. Town of Cheektowaga*, 2006 WL 2000124, *3 (W.D.N.Y. 2006) (a delay of nearly one year was fatal to party's motion to amend complaint).

In this case, plaintiffs did not move to amend their complaint until after the deadline of June 1, 2006 set by this Court in its initial scheduling order. (Docket # 30). Their failure to move within the court-ordered deadline was understandable and excusable because the New York Court of Appeals' decision in *Bi-Economy* did not issue until February 19, 2008, twenty months after the deadline. That finding does not end the inquiry, however, because plaintiffs waited eleven months following the decision to file their motion. The only excuse they

6

offer for this lengthy delay is their desire to see how the law would develop following the decision. (Docket # 73-9).

First, I note that the *Bi-Economy* decision was issued by New York's highest court and nothing in the decision itself suggests that it applies only to cases involving business interruption insurance policies or commercial insurance policies. Indeed, in a companion case decided the same day as *Bi-Economy*, *Panasia Estates, Inc. v. Hudson Ins. Co.*, the New York Court of Appeals explicitly stated:

> As we explained in [*Bi-Economy*,] consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context, so long as the damages were with the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.

10 N.Y.3d 200, 203 (2008) (internal quotations omitted).

Second, I note that at no time during the eleven-month period between *Bi-Economy* and plaintiffs' pending motion did plaintiffs seek the consent of the defendant or the permission of this Court to delay filing their anticipated motion.[4] Having failed to do either, plaintiffs assumed the risk that the delay attendant to their wait-and-see approach would not be excused under the good cause standard. Moreover, discovery was continuing during that eleven-month period and indeed was scheduled to conclude (other than one deposition which the parties were permitted additional time to conduct) a mere two days after plaintiffs filed the instant motion. Under these circumstances, I find that plaintiffs' reason for the delay falls short of the showing necessary to establish that they acted with the requisite diligence.

---

[4] In a telephone conference held on January 8, 2009, six days before the pending motion was filed, plaintiffs advised the Court and counsel of their intent to file the motion. The Court set a filing deadline of January 14, 2009. (Docket # 62).

B. **Prejudice**

Plaintiffs' diligence or lack thereof, while constituting the principal consideration in determining whether to grant a motion to amend under Rule 16, is not the only factor a court must consider. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d at 244. Whether, and to what extent, the non-moving party would be prejudiced by the amendment must also be assessed. *Id*. Balancing these considerations, courts have permitted amendments after substantial delay by the moving party where, for example, the amendment would result in little or no additional discovery and no motions for summary judgment were pending. *See*, *e.g.*, *Stephenson v. Dunford*, 320 F. Supp. 2d 44, 48-49 (W.D.N.Y. 2004) (granting defendants' motion to amend filed twenty-one months after a change in the substantive law and after discovery had concluded because no further discovery was needed), *vacated on other grounds*, 139 F. App'x 311 (2d Cir. 2005); *Jackson v. Roslyn Bd. of Educ.*, 596 F. Supp. 2d 581, 586 (E.D.N.Y. 2009) (finding that moving party's delay of five months in seeking to amend was "some evidence of lack of diligence," but granting motion because discovery had only recently been completed, extensive new discovery was not required and summary judgment motions had not been filed). *But see Rodriguez v. McGinnis*, 2004 WL 1145911, *14 (W.D.N.Y. 2004) (denying motion to amend filed nineteen months after a change in substantive law because discovery deadline had expired, case had been pending for six years and amendment would require additional discovery).

Here, Erie has made a reasonable showing of prejudice concerning plaintiffs' claims for emotional distress damages. The lawsuit has been pending for nearly four years and fact discovery concluded on January 16, 2009 – two days after plaintiffs filed the instant motion. Erie has represented that it would seek additional discovery regarding the emotional distress

8

claims, including continued depositions of both plaintiffs and disclosure of medical records. Such discovery will inevitably delay this litigation, which otherwise appears ready to proceed to the summary judgment phase.

While the claim for attorneys' fees will not likely entail any additional discovery at this stage, I nonetheless recommend that leave to amend to assert such a claim be denied on the grounds of futility. Nothing in *Bi-Economy* or any post-*Bi-Economy* authority cited by the parties suggests that the New York Court of Appeals intended through its *Bi-Economy* decision to alter in the insurance context the traditional American rule that each party should bear its own attorneys' fees. *See*, *e.g.*, *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979) ("[i]t is the rule in New York that [an award of attorneys' fees] may not be had in an affirmative action brought by an insured to settle its rights"); *Authelet v. Nationwide Mut. Ins. Co.*, 2008 WL 4771700, *4 (N.Y. Sup. Ct. 2008) (rejecting argument that *Bi-Economy* authorizes claim for attorneys' fees as consequential damages). *See also Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 177 (2d Cir. 2006) ("[u]nder New York law, an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy") (internal quotation omitted).

I reach a different conclusion, however, on the question of whether plaintiffs should be permitted to amend their complaint to add a claim for extra-contractual living expenses. As noted above, the policy contains a provision limiting plaintiffs' recovery of "reasonable additional living expenses" to a twelve-month period. (Docket # 64-4, Ex. A at 5). Notwithstanding that term, plaintiffs have maintained throughout this litigation that they are entitled to reimbursement of their living expenses beyond that twelve-month period because Erie

9

breached the policy by not paying the full amount of their loss, thus effectively preventing them from rebuilding. (Docket # 73-2, Exs. A and B). Consistent with this position, during discovery plaintiffs produced to Erie records reflecting those expenses during the period between the loss and January 2009.

Under these circumstances, where plaintiffs have already asserted a claim to recover additional living expense damages under a theory different from that articulated in *Bi-Economy*, I conclude that they should be permitted to seek those same damages under the *Bi-Economy* holding. Erie has been on notice since the inception of the case of plaintiffs' intent to seek recovery of those expenses, as well as of the actual expenses incurred. Any additional discovery that Erie seeks to conduct should necessarily be limited; I recommend that should Erie desire to engage in any such discovery, it be limited to sixty days.

## CONCLUSION

For the reasons discussed above, I recommend that plaintiffs' motion to amend their complaint **(Docket # 64)** be **DENIED** except insofar as it seeks to include a demand for consequential damages limited to extra-contractual living expenses.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
June  12  , 2009